# Meadville Fuel Gas Company et al., Appts., *v.* Meadville Natural Gas Company et al.

A natural gas company chartered under the act of May 29, 1885, was, by ordinance, granted permission to lay its pipes in the streets of a city, with a proviso that work should be begun within one year, gas supplied within fifteen months, and that no other privilege should be given by the city authorities for similar purposes for two years. Council, by ordinance, five months afterwards, granted permission to another natural gas company, chartered under the same act, to lay pipes in the streets, with the proviso that work should be begun within sixty days and gas supplied within six months. An injunction issued at the instance of the first company, against the second company and the city, was dissolved.

(Decided May 31, 1886.)

Appeal from a decree of the Common Pleas of Crawford County awarding and continuing a preliminary injunction. Reversed.

The Meadville Natural Gas Company filed a bill in equity January 29, 1886, setting forth:

I. That the city council of the city of Meadville, by ordinance No. 246, passed July 1, 1885, approved July 10, 1885, under the terms in said ordinance prescribed, granted to W. R. Bole and his associates, and to the plaintiff company, a corporation formed by them, the right to occupy the streets, avenues, lanes, and alleys of the city of Meadville, for the purpose of laying down and maintaining iron pipes for the conveyance and furnishing of natural gas to the residents of the city of Mead-

Cited in Citizens' Gas & Min. Co. v. Elwood, 114 Ind. 334, 16 N. E. 624, holding that a municipality is without power to grant a gas company an exclusive franchise.

NOTE.—The purpose of the act of May 29, 1885, amended by the act of May 11, 1897 (P. L. 50), was to open the field of natural-gas supply for free competition. Ordinances intended to throw obstructions in the road of a company, or to grant special favors to certain companies, are in violation of the spirit of the act, and will not be enforced. People's Natural Gas. Co. v. Pittsburgh, 1 Pa. Co. Ct. 311.

ville, for the production of heat for domestic, manufacturing, and other purposes.

II. That by said ordinance the city council contracted with the said W. R. Bole, and with the plaintiff company, for a good and valuable consideration therein specified, that no other privilege should be given by the city authorities of said city for a similar purpose during the term of two years from the date of the passage of said ordinance.

III. That upon the faith of the privilege granted by said ordinance, the said W. R. Bole and his associates organized the plaintiff corporation, to whom a charter of incorporation was granted October 26, 1885, with a capital stock of $100,000. That said W. R. Bole has assigned the plaintiff company all the rights and franchises granted by said ordinance. That said corporation has expended a large sum of money, to wit, more than $2,000, in leasing lands and drilling a well for natural gas near the city of Meadville.

IV. That the said corporation on the 30th day of November, 1885, entered into a contract with C. W. Mackey, C. W. Gilfillan, A. G. Egbert, and their associates, or a corporation to be formed by them, which corporation, when formed, was to be a party to said contract, by which the plaintiff corporation bound itself to lay pipes to the city of Meadville, at an expense of over $50,000, and in pursuance of which contract the plaintiff company has contracted for the pipes to be so laid.

V. That the said C. W. Mackey, C. W. Gilfillan, A. G. Egbert, and their associates, entered into the said contract with your orator to furnish gas for the supply of the city of Meadville, and in pursuance thereof have organized the Columbia Gas Light & Fuel Company of the city of Meadville, a corporation with a capital of $500,000, which last-named corporation has contracted liabilities amounting to more than $200,000, in the purchase of gas wells, gas territory, and pipe for mains, for the purpose of supplying the plaintiff company with gas; and is now receiving pipe and laying its main from said gas wells to the city of Meadville.

VI. That the said W. R. Bole, and his associates, and the said plaintiff company have done and performed, and in good faith

and with all possible despatch are doing and performing, all the said things by said ordinance stipulated, and contemplated by them to be done and performed, in pursuance of the purposes contemplated by the parties. That the term of two years is no more than will be reasonably required in which properly to complete the work of laying the pipes of said plaintiff company.

VII. That the respondents, G. W. Delamater, J. E. McFarland, Lewis Walker, and C. C. Carroll, well knowing the premises, and devising, and intending to hinder, delay, annoy, damage, wrong, and injure the plaintiffs, on the 2d day of December, 1885, fraudulently, secretly, and wrongfully solicited and induced the city council of the city of Meadville to pass city ordinance No. 252, granting to them, upon the terms and conditions prescribed in said last-named ordinance, the right and privilege to enter upon the streets, lanes, avenues, and alleys of said city, for the purpose of laying pipes for the supply of natural gas to the residents of the city of Meadville, in violation of the previous contract made by said city authorities with the plaintiffs, as heretofore set forth.

VIII. That the respondents have never given any such bond to the city, as is required by said ordinance No. 252, and therefore have no rights or privileges, under said ordinance, to lay pipes in the streets of Meadville.

IX. That the said G. W. Delamater, J. E. McFarland, Lewis Walker, C. C. Carroll, and their associates, have organized themselves into a corporation called the Meadville Fuel Gas Company; and, under the pretended authority of said last-named ordinance, threaten to and are about to enter upon the streets, lanes, avenues, and alleys of said city, and dig up, excavate, and lay their mains and pipes in and under, the same, for the purpose of conveying and supplying natural gas to the residents along said streets.

X. That the plaintiffs propose, as soon as the weather will permit, also to enter upon the work of laying pipes along and under said streets; and, in order that the work be properly done within the time allowed by the ordinance granting the right to the plaintiffs, it will be necessary for the plaintiffs to occupy

and use the whole of the streets not absolutely required for use by the public; and it will be impracticable for both companies to occupy the streets for the purpose of laying pipes therein at one and the same time.

XI. That the grant to the plaintiffs, of the exclusive right to occupy and use the streets of said city for the purpose of laying pipes therein for the supply of natural gas during the period of two years, was a just, reasonable, and legal exercise of mu nicipal authority; and conferred upon the plaintiffs valuable and vested rights of which they cannot legally be deprived; and the passage of city ordinance No. 252 conferred no rights upon the respondents to enter upon and lay pipes in the streets of said city within the said period of two years from July 1, 1885, without the consent of the plaintiffs.

XII. That, if the respondents are allowed to proceed with the work of laying pipes in the streets of said city, for the supply of natural gas to the inhabitants thereof, prior to the expiration of the said two years from July 1, 1885, great and irreparable damage will be done to the plaintiffs, not only by the hindering and delaying of their work of laying pipes, but by interfering with their business in supplying natural gas to the residents of the city of Meadville, and thereby depriving the plaintiffs of the profits and earnings which would otherwise and of right ought to accrue to the plaintiffs during the said term of two years.

The plaintiffs prayed an injunction:

1. Restraining the city of Meadville, its officers and agents, from granting to any person or company whatever the right to enter upon, dig up, or lay pipes in the streets, avenues, alleys, and lanes of the city of Meadville, for the supply of natural gas to the inhabitants of said city, except the plaintiffs, during the term of two years from the 1st day of July, 1885.

2. Restraining the said city, its officers and agents, from approving any bond given by the respondents or any of them, as required by said ordinance No. 252; and from doing any act to authorize or encourage the other respondents, or any of them, in laying pipes for natural gas in the city of Meadville, during the said period of two years.

3. Restraining the respondents, G. W. Delamater, J. E. Mc-Farland, Lewis Walker, C. C. Carroll, and the Meadville Fuel Gas Company, their agents and employees, from entering upon, digging up, and laying pipes along and under the streets, lanes, avenues, and alleys of said city during the said term of two years from the 1st day of July, 1885.

4. Enjoining and restraining the respondents from doing any act to interfere with the plaintiffs, or deprive them of their rights .to the exclusive use of the streets, lanes, avenues, and alleys of said city, for the purpose of laying pipes therein for natural gas, during the said term of two years from July 1, 1885.

5. Enjoining and restraining the respondents from doing any act to interfere with or deprive the plaintiffs of their exclusive right to supply natural gas to the inhabitants of said city of Meadville, during the said term of two years from July 1, 1885.

City ordinance No. 246, above referred to and made part of the bill, after authorizing the laying of pipes in the streets, etc., and requiring an indemnifying bond, contained, among others, the following provisions:

Sec. 2. "That the rights and privileges hereby granted are subject to such regulations and restrictions as may be imposed by the city council, and as are reasonable and just for the interest of the city of Meadville."

Sec. 3. "That in consideration of the rights and privileges hereby granted, and for the purposes aforesaid, the said William R. Bole and his associates, or the corporation to be organized by them, shall furnish the city buildings, market house, hose and engine houses of the fire department in said city, gas for fuel purposes, free of all costs and charges: Provided, however, That the city shall at its own expense lay down and maintain the service pipe or pipes from the main to said several buildings."

Sec. 5. "That the said Wm. R. Bole and his associates, or the corporation to be organized by them, shall commence work within one year from the date hereof, and shall introduce and furnish natural gas for the purpose aforesaid into said city within fifteen months from the date hereof; and a failure so to do shall

work a forfeiture of all the rights and privileges hereby granted, and shall render this ordinance null and void."

Sec. 6. "That if the said Wm. R. Bole and his associates, or a corporation to be organized by them, shall begin work within the time mentioned, and shall complete the same as herein specified, and shall comply with all the terms and conditions herein contained, then no other privilege shall be given by the city authorities for a similar purpose during the term of two (2) years from the date of the passage hereof."

Ordinance No. 252 contained provisions substantially similar to ordinance No. 246, with the exception of section 6 of the latter ordinance, which was omitted; and a provision requiring a bond to indemnify the city from any claim for damages, because of the passage of this ordinance, by Wm. R. Bole and his associates, etc., and the following section:

Sec. 5. "That the said G. W. Delamater, J. E. McFarland, Lewis Walker, and C. C. Carroll and their associates, or the corporation to be organized by them, shall commence work within sixty days from the date hereof, and shall introduce and furnish natural gas for the purposes aforesaid into said city within six months from the date hereof; and a failure so to do shall work a forfeiture of all the rights and privileges hereby granted, and shall render this ordinance null and void."

The court granted a preliminary injunction, as prayed, during the said period of two years, or until the further order of the court.

Affidavits, besides supporting the allegations of the bill, alleged, *inter alia,* unsuccessful negotiations for a supply of natural gas, leasing lands and sinking test wells near Meadville, and finally the organization and contract with the Columbia Gas Light & Fuel Co.

The answer of the respondents contained the following averments in answer to the respective paragraphs of the bill:

1. Admitted that ordinance No. 246 granted to W. R. Bole and his associates, or a corporation to be formed by them, the right to use the streets; but denied that the right was granted to the plaintiff company.

2. Denied a good and valuable consideration, and the power of councils to contract as therein alleged.

3. Neither admitted nor denied, for want of information.

4. Denied the allegation that plaintiff company entered into a contract to lay pipes to the city of Meadville at an expense of $50,000. As to the other matters, neither admitted nor denied, for want of information.

5. Denied allegations except as to alleged fact that Mackey, Gilfillan, and Egbert entered into a contract with the complainant company to furnish gas for the supply of the city of Meadville, of which matter they alleged want of information. Admitted that the Columbia company was laying gas pipes to the city of Meadville. Averred that the matters in the fifth paragraph were immaterial.

6. Denied good faith and despatch, and that two years would be reasonably required to complete the work of laying the pipes. Averred that Bole and his associates were not owners of any natural gas wells or territory from which they expected to bring gas to Meadville at the time the ordinance was passed, but that said ordinance was procured by Bole for purposes of speculation, and that the pipes could be laid in very much shorter time than two years.

7. Denied.

8. Denied and alleged belief that said matters were immaterial.

9. Allegations admitted, but denied that authority was a pretended authority.

10. Denied allegations as to necessity of occupancy of whole of streets by the plaintiff company, and averred that it was practicable for both of said companies to lay their pipes through said city during the same period.

11. Denied.

12. Denied and alleged that at the time of the filing of the bill in this case, the complainant was not in the occupancy of any street or alley in said city, and had not laid any pipes in any of said streets or alleys.

The affidavit of the treasurer of the Meadville Fuel Gas Company, filed by the respondents, alleged:

"That the Meadville Fuel Gas Company, in pursuance of its charter and the rights conferred upon it by said ordinance, has

purchased the necessary pipe, etc., for piping the said city, and has contracted obligations amounting to about $40,000; that the said company has also entered into a contract with the North-western Pennsylvania Natural Gas Company, by which it agrees, in consideration of said company's laying an 8-inch line from its wells in Pine Grove township, Venango county, Pennsylvania, to the city of Meadville, and furnishing natural gas through the same, to pipe said city throughout, with suitable sizes of pipe, in a skilful and workmanlike manner, and to purchase from said Northwestern Pennsylvania Natural Gas Company sufficient natural gas to supply its customers in said city with natural gas for fuel and other lawful purposes; that the said Northwestern Pennsylvania Natural Gas Company, in compliance with its part of said contract, has purchased the pipe necessary to lay its line to Meadville, and has contracted obligations amounting to $175,000 and upwards; that said company has secured its right of way for said line and has a large quantity of pipe strung along the same; that the said company has about 10 miles of pipe screwed together, a portion of which is buried; that the said company is pushing its work with energy, and deponent believes that it will complete its said line to Meadville in the neighborhood of thirty days after this date; that deponent is informed and believes that there are about 27 miles of streets in the city of Meadville; that two companies could lay their mains and pipes in the streets of said city without in any way interfering with each other's work; that the Meadville Fuel Gas Company commenced work in good faith in the streets of said city for the purpose of laying its mains and pipes for the distribution and supply of natural gas, and was prosecuting said work with a large force of men when the injunction was served upon it in this case; that said defendant company was not in any way hindering or interfering with the work of the plaintiff company; that deponent is acquainted with the time occupied in piping Oil City, Franklin, Titusville, Jamestown, and other places throughout the oil country; that from the time required in piping said cities and places he would consider from sixty to ninety days a reasonable time within which to pipe a place of the size of Meadville; that two years would be a very

unreasonable time in which to complete said work; that such a dilatory method could answer no useful purpose, and would be a source of great annoyance and inconvenience to the citizens of said city; that such a slow method would deprive many of the citizens of Meadville of the use of natural gas for a long and unreasonable length of time; that deponent believes that, if the injunction in this case is dissolved, the Meadville Fuel Gas Company will, within sixty days after this date, place natural gas within the reach of all persons in said city who may desire to use the same."

Numerous affidavits were filed by both sides supporting their respective allegations.

After hearing, February 15, 1886, the court decreed that the preliminary injunction remain in full force until further order.

The court, WILLIAMS, P. J., 4th district, specially presiding, filed the following opinion, after stating the facts:

The position of the plaintiffs is that the grant by the city to the defendants is in violation of ordinance No. 246; is an unjust withdrawal of the protection under the guaranty of which it has expended large sums of money; and lets loose upon it a powerful rival whose great resources make it possible to perform the feat which the affidavits of its officers assure us is proposed, *viz.,* to bring natural gas a distance of 40 miles, and place it within reach of the citizens within sixty days.

The defendants reply that so much of ordinance No. 246 as is violated by ordinance No. 252 is *ultra vires,* is an attempt to confer an exclusive right forbidden by the act of 1885, and is an irrevocable grant of a special privilege prohibited by the Constitution.

Our question, therefore, is whether ordinance No. 246 is within the power of the city councils under the Constitution and laws of the commonwealth.

We conclude that the act of 1885 does not determine the question, for the proviso cited is not a limitation put upon the powers of the city councils, but a rule for its own construction. The act of 1874 does confer an exclusive right upon companies organized under its provisions. The act of 1885 does not do this

by express words, and the proviso declares that it shall not be so construed as to do it by implication.

With equal certainty we conclude that the Constitution does not determine our question. The grant in ordinance No. 246 is no more perpetual or irrevocable in the sense in which those words are used in the Constitution than is any grant of a right to lay water or gas pipes, after money has been paid and rights acquired upon the faith of the grant. This sort of irrevocability is not forbidden, but protected, by the Constitution.

The provision that the gas must be introduced into the city within fifteen months, and that for two years from the date of the ordinance the streets shall not be torn up by or surrendered to any other natural gas company, is such an inducement to the undertaking and such a regulation of the manner of its prosecution as is incidental to the power to contract upon the subject. It involves no abandonment of municipal control over the streets, or of the power of legislation upon any municipal subject. Why, then, is it *ultra vires?* The city councils may lawfully contract about those things which are of public use, and concern the comfort and security of the citizens. Williamsport v. Com. 84 Pa. 487, 24 Am. Rep. 208; Philadelphia v. Tryon, 35 Pa. 401; Com. *ex rel* Reinboth v. Pittsburgh, 41 Pa. 284.

The introduction of natural gas as a fuel is declared by the act of 1885 to be a public use. P. L. 1885, p. 33. It is therefore a subject in relation to which the power to contract exists.

As to the terms of the contract, the restrictions and regulations to be imposed, the time and manner of the occupancy of the streets for the laying down of pipes, and all other details, the act of 1885 places the power of the legislature in the hands of the councils, and gives them absolute control over the subject. They may refuse to admit a natural-gas company altogether. If they admit it they may dictate the terms on which it shall be admitted, and the time and manner of its coming; and no appeal lies from the decision of the city authorities upon these questions.

Let us now see what the arrangement was under which the plaintiff claims to have acquired rights for which protection is asked. The city of Meadville is located about 40 miles from

any known supply of natural gas. The introduction of such gas as a fuel was desired by the manufacturers and citizens. To meet this want would require a very large expenditure of money and labor. The uncertainty as to when the supply would fail made this expenditure a hazardous one. The gas is a dangerous explosive, and requires the exercise of great care in putting down the pipes and connections. With these facts before them, several citizens said, in substance, to the councils: "We will undertake this difficult and hazardous enterprise, if we can be permitted to take the time necessary for its accomplishment in the best and most economical manner, and be safe against any interference by any rival company until our system is completed." .

By ordinance No. 246, the city made an offer to give to these gentlemen certain terms upon which the enterprise might be undertaken. It said, in substance: "You may have fifteen months in which to bring the gas into the city; and, to enable you to close up your work without interference, you may have two years from this date before we will let loose a rival upon you or compel you to enter upon a scramble for the occupancy of any street."

This proposition was accepted, the plaintiff company organized, test wells put down, and large sums expended and liabilities incurred upon the faith of the agreement thus made on the part of the city. Why should not this agreement be enforced? It relates, as we have seen, to a subject which is one of municipal concern, over which, on general principles, the city has control, and which was expressly committed to it by the act of 1885. It was made in due form and upon a sufficient consideration. No fraud upon the part of Mr. Bole or his associates is alleged in its making; no want of due diligence or good faith so far in its performance.

We think it is binding; that the attempt to repudiate it is in bad faith; that the injury resulting from such attempt is one for which the remedy at law is inadequate, and one against which it is the duty of a chancellor to enjoin.

But if we are wrong in our conclusion as to the validity of the ordinance as a whole, and if it should be held that the ordi-

nance was intended to create a monopoly after the expiration of the fifteen months allowed for the introduction of the plant by the plaintiff and to be so far void, yet, up to that point it must be regarded as a valid regulation of the time and manner in which the right granted by it may be exercised, by which the city is bound no less than the plaintiff.

To hold otherwise is to permit the city to induce the expenditure of a quarter of a million of dollars upon its promise that the work may be done within a given time, and then destroy the entire investment by granting the same privilege over to a company strong enough to do the work in half that time. This would make the relative might of the parties the measure of their rights under the ordinances of the city, a measure that has not been in general use for some centuries, and strip the city of all control over the subject beyond the giving of the signal for the scramble to begin.

The defendant took this writ, assigning for error the action of the court in granting and continuing the preliminary injunction.

*H. McSweeney, John J. Henderson, Thomas Roddy, Brawley & McClintock, S. C. T. Dodd,* and *William Henry Rawle,* for appellants.—Both the plaintiff and defendant companies have complied with all the requirements of the act of May 29, 1885, to entitle them to lay pipes in the streets of the city of Meadville; and each has equal rights in said city. The plaintiffs may have their remedy against the city for violation of contract; but they have no remedy against the defendants whose rights are as complete as their own. A corporation is never enjoined from acting after letters patent have issued. Mitcheson v. Harlan, 3 Phila. 385.

The attempt by the city of Meadville to grant an exclusive right is *ultra vires* and void:

1. Because it has no express legislative authority to do so. Nothing in the act of April 6, 1870 (P. L. 969), granting the charter to the city of Meadville, confers such power. It is not necessarily implied or incident to the powers expressly granted; nor is it indispensable to the object for which the corporation is

formed. The power of regulation gives no power to grant a monopoly. Jackson County Horse R. Co. v. Interstate Rapid Transit R. Co. 24 Fed. 306; Western Sav. Fund Soc. v. Philadelphia, 31 Pa. 189; Wheeler v. Philadelphia, 77 Pa. 338; Davis v. New York, 14 N. Y. 506, 67 Am. Dec. 186; Milhau v. Sharp, 27 N. Y. 611, 84 Am. Dec. 314; People's Pass. R. Co. v. Memphis City R. Co. 10 Wall. 52, 19 L. ed. 849; Charles River Bridge v. Warren Bridge, 11 Pet. 536, 9 L. ed. 819; Cincinnati Street R. Co. v. Smith, 29 Ohio St. 295; New Orleans City R. Co. v. Crescent City R. Co. 12 Fed. 308; 2 Redf. Railways, p. 564; Norwich Gaslight Co. v. Norwich City Gas Co. 25 Conn. 19; State *ex rel.* Atty. Gen. v. Cincinnati Gaslight & Coke Co. 18 Ohio St. 262; Indianapolis v. Indianapolis Gaslight & Coke Co. 66 Ind. 396; Citizens' Gaslight Co. v. Louisville Gas Co. 81 Ky. 263; New Orleans Gaslight Co. v. Louisiana Light & H. P. & Mfg. Co. 115 U. S. 650, 29 L. ed. 516, 6 Sup. Ct. Rep. 252, and New Orleans Waterworks Co. v. Rivers, 115 U. S. 674, 29 L. ed. 525, 6 Sup. Ct. Rep. 273; Quincy v. Bull, 106 Ill. 337; Gale v. Kalamazoo, 23 Mich. 344, 9 Am. Rep. 80; State v. Milwaukee Gaslight Co. 29 Wis. 454, 9 Am. Rep. 598.

Any reasonable doubt of the power is resolved against the corporation. Dill. Mun. Corp. §§ 89, 91; Smith v. Newbern, 70 N. C. 14, 16 Am. Rep. 766; Cook County v. McCrea, 93 Ill. 236; Dalrymple v. Wilkesbarre, 11 Luzerne Legal Reg. 41; Thomas v. Richmond, 12 Wall. 349, 20 L. ed. 453; Minturn v. Larue, 23 How. 435, 16 L. ed. 574; Thomson v. Lee County, 3 Wall. 330, 18 L. ed. 178, 34 Am. Dec. 628, and note.

2. Because the power vested in the council to assent or withhold its assent, etc., by the act of May 29, 1885, is legislative in its character; and the council had no right to devest itself of it. Powers are conferred upon municipal corporations for public purposes; and, as their legislative powers cannot, as we have just seen, be delegated, so they cannot be bargained or bartered away. Such corporations may make authorized contracts, but they have no power as a party to make contracts, or pass bylaws which shall cede away, control, or embarrass their legislative or governmental powers, or which shall disable them from

performing their public duties.   Dill. Mun. Corp. § 97; Goszler v. Georgetown, 6 Wheat. 593, 5 L. ed. 339; Branson v. Philadelphia, 47 Pa. 329; Mott v. Pennsylvania R. Co. 30 Pa. 9, 72 Am. Dec. 664; Johnson v. Philadelphia, 60 Pa. 451; Milhau v. Sharp, 27 N. Y. 611, 84 Am. Dec. 314; State *ex rel.* Atty. Gen. v. Cincinnati Gaslight & Coke Co. 18 Ohio St. 262; Bailey v. New York, 3 Hill, 531, 38 Am. Dec. 669.

3. Because the alleged contract is in violation of the provision of the Constitution of Pennsylvania prohibiting the passage of any local or special law granting to any corporation or individual any special privilege or immunity.   Article 3, § 7.

This ordinance was local; it granted a special privilege for two years; it was irrevocable for that time, and if for two years, so, in another case, for three or five or twenty years.

A city ordinance cannot modify an act of the legislature.   *A fortiori* it cannot so modify the organic law.   Com. v. Erie & N. E. R. Co. 27 Pa. 358, 67 Am. Dec. 471.

That a city may, by ordinance, alter the salary of an official during his term, etc., does not affect the question, as that is only a part of the lesser municipal machinery.   In the cases of New Orleans Gaslight Co. v. Louisiana Light & H. P. & Mfg. Co. 115 U. S. 650, 29 L. ed. 516, 6 Sup. Ct. Rep. 252, and Citizens' Gaslight Co. v. Louisville Gas Co. 81 Ky. 263, there was no constitutional prohibition and such cases have, therefore, no application.

4. The ordinance was in violation both of the letter and spirit of the act of May 29, 1885.

The act of 1885 carefully followed the admonition of the supreme court in Emerson & P. Fuel Gas Co. v. Com. 15 W. N. C. 425.   It provided that neither the act of 1885 itself, "or any other, shall be construed" not only to confer a claim of exclusive right, but to "confer, authorize, or give color to any claim of exclusive right in any corporation, howsoever formed, dealing in any way or for any purpose in natural gas."

The act of May 29, 1885, was intended to open the field of natural gas supply to free competition; and it expressly declares it shall not be so construed as to favor or give color to any monopoly in the business.   It is the duty of city councils to

carry out the act in good faith by appropriate local regulations. Any ordinance or acts of the local authorities intended to give special favors to one or more companies, or to throw unreasonable obstructions in the way of new companies, is a violation of the letter and spirit of the act." Per WHITE, J., in People's Natural Gas Co. v. Pittsburgh, 1 Pa. Co. Ct. 311; Affirmed by a divided court in Pittsburg's Appeal, the court filing no opinion.

5. If the city had the right to confer the exclusive power, it had also the right to recall it.

The Constitution prohibits the grant of irrevocable privileges. Const. 1874, art. 1, § 17.

If the ordinance was a part of the contract, so also was the constitutional provision. Morawetz, Priv. Corp. 464; Miller v. New York, 15 Wall. 488, 21 L. ed. 101; and Tomlinson v. Jessup, 15 Wall. 457, 21 L. ed 205; New Orleans Waterworks Co. v. Rivers, 115 U. S. 680, 29 L. ed. 527, 6 Sup. Ct. Rep. 273; Louisville Gas Co. v. Citizens' Gaslight Co. 115 U. S. 696, 29 L. ed. 515, 6 Sup. Ct. Rep. 265.

It is no argument against this right that it is liable to abuse A motion in the constitutional convention to add to § 17: "Provided, That no injustice be done thereby," was lost. 4 Pa. Constitutional Debates, 756.

"The power to amend corporate charters is no doubt one that bad men may abuse; but when the amendments are within the scope of the power, the courts cannot interfere with the discretion of the legislatures that have been invested with authority to make them." Spring Valley Waterworks v. Schottler, 110 U. S. 355, 28 L. ed. 177, 4 Sup. Ct. Rep. 48.

6. The alleged contract is in restraint of trade, contrary to public policy, and void. Gale v. Kalamazoo, 23 Mich. 344, 9 Am. Rep. 80; Chicago v. Rumpff, 45 Ill. 90, 92 Am. Dec. 200; Norwich Gaslight Co. v. Norwich City Gas Co. 25 Conn. 19.

7. It is void as a police regulation. A legislature cannot barter away its power of eminent domain or its police powers. Cooley, Const. Lim. 207, 208, etc.; *Re* Girard College Grounds, 31 Phila. Legal Int. 164.

If the ordinance is a police regulation the plaintiff has no standing in court.

*C. Heydrick, J. W. Smith, W. R. Bole, D. C. McCoy, C. W. Tyler, Joshua Douglass,* and *George W. Biddle,* for appellees.
—The grant to the appellee, the Meadville Natural Gas Company, contained in ordinance 246, was based upon a valuable consideration moving from the company to the city of Meadville, and operated as a valid contract between them; and the company having spent and contracted for the expenditure of large sums of money upon its faith, none of its provisions can be revoked or abrogated by the city.

The assent of the city was a condition precedent to the right of any of these companies to enter its territory for the purpose of laying pipes therein. When once given it was irrevocable; and, as it might have been accompanied with stipulations favorable to the municipality, the performance of which became obligatory upon the company entering under the assent thus given, the counter stipulations of the city became equally obligatory upon it, provided no law was thereby infringed.

The authorized body of a municipal corporation may bind it by an ordinance which, in favor of private persons interested therein, may, if so intended, operate as a contract. Dill. Mun. Corp. § 374.

In Pennsylvania there are illustrations of this principle in the cases. Thus, it has been held that the passage of an ordinance allowing railroad companies to occupy streets on certain conditions, when accepted by the company, becomes a contract binding upon it, and therefore upon the municipality. Federal Street Passenger R. Co. v. Allegheny, 31 Pittsb. L. J. 259; Philadelphia v. Lombard & S. Streets Pass. R. Co. 3 Grant Cas. 403.

The regulation of the occupancy of the streets, and the protection of the plaintiff, during the time required for introducing the gas, were both legal subjects of municipal control.

The control and regulation of the streets of Meadville is expressly vested in councils by the city charter. Act April 6, 1870, § 5.

Moreover, the act of May 29, 1885 (P. L. 29), under which the complainant company was incorporated, expressly transfers the state franchise of the control of public highways in the matter of introducing natural gas to the municipal authorities.

A regulation prohibiting more than one gas company at a time from tearing up and impeding the public streets is a reasonable exercise of the municipal authority, conducive to the public convenience, and as far removed from the grant of a trade monopoly as is a municipal prohibition against the occupation of a thoroughfare by more than one railroad company. That such a regulation is reasonable has been decided by this court.

See Northern Liberties v. Northern Liberties Gas Co. 12 Pa. 318, where an ordinance prohibiting the laying of gas pipes in the Northern Liberties of Philadelphia between the months of November and March was held to be not unreasonable, although passed after the charter of the gas company, ROGERS, J., saying that an ordinance which is for a limited time merely is a regulation, and not in restraint of trade, as is clearly shown by all the cases.

The grant of exclusive privileges for the period of two years from the date of the ordinance was in no sense the grant of a monopoly, but a valid municipal regulation, necessary as well for the convenience of the public and preserving the use of the highways of the city, as for the protection and benefit of the gas company.

The ordinance does not sin against the Constitution. Article 1, § 17, and article 3, § 7, were intended as limitations upon the power of the legislature. But a municipal ordinance is in no sense a law within the meaning of the Constitution. See Baldwin v. Philadelphia, 99 Pa. 164; Crawford County v. Nash, 99 Pa. 253.

Besides, there is no special privilege or immunity granted at all to the appellee. The public and it are merely protected against an interference of grave injury to both, for the limited time during which the company is erecting a costly plant which requires a considerable outlay of time and money for its construction.

Article 16, § 3, asserts that there shall never be an abridgment of the right of exercise of the eminent domain and police power of the state. It is admitted that the city of Meadville could have refused its assent to the admission of any natural gas company. Its refusal authorized by law could not have abridged

the rights of the state, for it was the state which authorized the withholding of the municipal assent. If the state should find in the future that this should prove injurious, it might change or modify the law in this respect.

The ordinance does not offend against the act of May 29, 1885. The city of Meadville was told, in this act, that it might grant or withhold its assent to any of these companies. It might therefore, after the grant to the Natural Gas Company, have withheld its assent altogether from the appellant company. It was obliged to assign no reason for such refusal. It was authorized to say, I refuse. Why, then, if it could lawfully refuse altogether, and if the giving of its assent was not a legislative act, could it not say to a second company applying for leave to come in: "You may come in, but you must come in subject to the stipulations already made by the city with a prior company."

The court can hold the city and the subsequent company to the observance of this fair agreement.

The municipal control secured by the act of 1885 distinguishes this case from Norwich Gaslight Co. v. Norwich City Gas Co. 25 Conn. 19, and State *ex rel.* Atty. Gen. v. Cincinnati Gaslight & Coke Co. 18 Ohio St. 262, 293.

Those were cases of monopolies and the business was private. Here it is a public use, by the terms of the act.

For the attempted breach of the stipulations contained in the contract between the complainant and the city of Meadville the proper remedy is by injunction in a court of equity.

The prevention by injunction, of the breach of negative contracts, is closely akin to the remedy by way of specific performance of agreements of an affirmative nature, and the reason given for the exercise of this remedy in such cases is the lack of an adequate remedy at law, the prevention of a multiplicity of suits, which the complainant would be entitled to institute every day that the negative stipulation continued broken, and that thereby indirectly it is to the advantage and for the protection of the defendant himself. 2 High, Inj. §§ 1134, 1142, 1183; Steward v. Winters, 4 Sandf. Ch. 587.

The application of this principle to cases of stipulations in leases has been very frequent, and the authorities are all col-

lected in 2 High on Injunctions, §§ 1141–1153; and in Pennsylvania the cases of Clark v. Martin, 49 Pa. 289, and St. Andrew's Lutheran Church's Appeal, 67 Pa. 514, are examples of the restraining by injunction of the breach of covenants relating to land.

Cases of contract for exclusive personal services afford another pertinent illustration of the practice of courts of equity to restrain by injunction the breach of negative contracts.

In Lumley v. Wagner (1852) 1 De G. M. & G. 604, a singer agreed with the plaintiff that she would sing at his theater for a certain period of time, and would not sing elsewhere without his written authority. It was held, upon a bill to restrain her from singing for a third party, that the court would interfere to prevent the breach of contract in this respect, and an injunction was granted.

So in Webster v. Dillon, 3 Jur. N. S. 432, the court restrained by injunction an actor, who had agreed to perform at a certain theater during twelve consecutive nights, from acting in any other theater during that period.

Soon after, the courts began to hold that, even in contracts containing no express negative stipulation, where, from the nature of the transaction, such a stipulation could be reasonably implied, equity would enjoin acts in violation thereof.

Thus, in De Mattos v. Gibson, 4 DeG. & J. 287, Lord Chancellor CAMPBELL enjoined a third party from using a ship in a manner inconsistent with a charter-party entered into between the complainant and the owners.

In Montague v. Flockton (1873) L. R. 16 Eq. 189, an actor was restrained by injunction from performing at any other theater during the pendency of his engagement with the complainant, notwithstanding his contract contained no negative clause restricting him from performing elsewhere.

The same point has frequently been determined in this country, and actors and others whose services are of a peculiar and personal nature have been restrained by injunction from performing in violation of their contracts. See Daly v. Smith, 6 Jones & S. 158; Lacy v. Henck, 18 Am. Law Rev. 1033; and McCaull v. Braham, 16 Fed. 37.

Notwithstanding the few earlier cases inconsistent with this doctrine, the right of a court of equity to enjoin an employee from transferring his services from one employer to another, in violation of his contract with the first, must now be considered definitely established.

Still more closely allied to the question now before the court are those cases of trade agreements in which one party stipulates. that he will not exercise a certain trade within a certain locality or period of time.    In these cases equity has always restrained a breach of such stipulations, by injunction.

A good illustration of this class of cases is Catt v. Tourle, L. R. 4 Ch. 654.    The plaintiff, a brewer, sold a piece of land with a covenant that he and his heirs should have the exclusive right of supplying beer to any public house erected on the land.    The defendant, who was also a brewer, acquired a portion of the land with notice of the covenant, and erected on it a public house which he supplied with his own beer.    The plaintiff filed his bill for an injunction to restrain defendant from supplying beer, which was granted.    See also McClurg's Appeal (1868) 58 Pa. 51.

Finally, the Supreme Court of the United States in the cases recently determined—of the New Orleans Gaslight Co. v. Louisiana Light & H. P. & Mfg. Co. 115 U. S. 650, 29 L. ed. 516, 6 Sup. Ct. Rep. 252; New Orleans Waterworks Co. v. Rivers, 115 U. S. 674, 29 L. ed. 525, 6 Sup. Ct. Rep. 273, and the Louisville Gas Co. v. Citizens' Gaslight Co. 115 U. S. 696, 29 L. ed. 510, 6 Sup. Ct. Rep. 265 upheld without argument the right. of a court of equity to issue an injunction to restrain the interference with a valid and exclusive right duly vested by a contract in the plaintiff to supply a particular locality with gas and. water.    These cases are decisive of this question.

PER CURIAM:
This preliminary decree is reversed, and the injunction dissolved, at the costs of the appellee.